# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| TONY UNDERWOOD, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. 4:25-CV-2089** |
| | § | |
| HARRIS COUNTY a.k.a HARRIS | § | **JURY DEMAND** |
| HEALTH SYSTEM, a.k.a BEN TAUB | § | |
| HOSPITAL, and CITY OF HOUSTON | § | |
| a.k.a HOUSTON POLICE | § | |
| DEPARTMENT, | § | |
| *Defendants.* | § | |

## HARRIS COUNTY'S MOTION TO DISMISS

# **TABLE OF CONTENTS**

Page(s)

I. Background..................................................................................................1

II. Summary of argument .............................................................................2

    a.   This court has no jurisdiction to rule, grant habeas or an injunction ..............3

    b.   Injunctive relief is not for this court to grant or deny .....................................4

    c.   The Underwoods' Fourteenth Amendment rights have not been violated ......5

    d.   Mr. Underwood's access to counsel and courts is not violated.......................8

    e.   The Underwoods "familial association" rights are not being violated...........8

    f.   Mr. Underwood's religious rights are not violated........................................10

    g.   Mr. Underwood's familial association has not been violated........................10

    h.   Plaintiffs have not shown *Monell* ................................................................12

III. Conclusion ............................................................................................14

# **<u>TABLE OF AUTHORITIES</u>**

Page(s)

Cases

*Bedingfield v. Deen*,
  487 F. App'x 219 (5th Cir. 2012) ...............................................................................7

*Bell v. Wolfish*,
  441 U.S. 520 (1979)...............................................................................................5, 6

*Berry v. Brady*,
  192 F.3d 504 (5th Cir. 1999) ....................................................................................7

*Block v. Rutherford,*
  468 U.S. 576, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984)............................................7

*Bluefield Water Association, Inc. v. City of Starkville, Miss.*,
  577 F.3d 250 (5th Cir. 2009)....................................................................................4

*Bufalino v. Reno*,
  613 F.2d 568 (5th Cir.1980)......................................................................................1

*Byrum v. Landreth*,
  566 F.3d 442 (5th Cir. 2009) ....................................................................................4

*Dunn v. Castro*,
  621 F.3d 1196 (9th Cir. 2010) ................................................................................12

*Eisenstadt v. Baird,*
  405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972) ..............................................6

*Estate of Davis ex rel. McCully v. City of N. Richland Hills*,
  406 F.3d 375 (5th Cir. 2005)..................................................................................13

*Flynn v. Burns*,
  289 F. Supp. 3d 948 (E.D. Wis. 2018) ...................................................................12

*Gerstein v. Pugh,*
  420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975)...............................................5, 6

*Griswold v. Connecticut,*
  381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) ..............................................6

*Hewitt v. Helms,*
459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983)..............................................9

*Inaimi v. Harris Cnty., Tex.,*
No. 4:21-CV-01832, 2022 WL 901556 (S.D. Tex. Mar. 25, 2022) ......................13

*Jones v. North Carolina Prisoners' Labor Union, Inc.,*
433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977)..............................................9

*Kingsley v. Hendrickson,*
576 U.S. 389 (2015)...............................................................................................7

*Malavé v. Weir,*
No. 16-CV-0009, 2018 WL 500644 (D. Conn. Jan. 22, 2018)............................12

*McCray v. Sullivan,*
509 F.2d 1332 (5th Cir. 1975)..............................................................................7

*Meyer v. Nebraska,*
262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923)...........................................6, 9

*Moore v. East Cleveland,*
431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) ..........................................9

*Oreye v. Low,*
No. 1:24CV289, 2025 WL 715742 (E.D. Tex. Feb. 6, 2025)................................5

*Overton v. Bazzetta,*
539 U.S. 126 (2003).....................................................................................10, 11, 12

*Patterson v. City of New York,*
No. 11-CV-7976, 2012 WL 3264354 (S.D.N.Y. Aug. 9, 2012)...........................11

*People of State of Ill. ex rel. McCollum v. Bd. of Ed. of Sch. Dist. No. 71,*
*Champaign Cnty., Ill.,*
333 U.S. 203, (1948).............................................................................................10

*Peterson v. City of Fort Worth,*
588 F.3d 838 (5th Cir. 2009)................................................................................13

*Preiser v. Rodriguez,*
411 U.S. 475 (1973)................................................................................................3

*Roberts v. United States Jaycees,*
 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984)..............................................9

*Roe v. Wade,*
 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973)................................................6

*Rose v. Lundy,*
 455 U.S. 509 (1982).................................................................................................1

*Schall v. Martin,*
 467 U.S. 253, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984)...........................................7

*Sealey v. Olszewksi,*
 No. 14-CV-3, 2015 WL 9484521 (W.D.N.Y. Dec. 29, 2015).............................11

*Shaw v. Murphy,*
 532 U.S. 223, 121 S.Ct. 1475, 149 L.Ed.2d 420 (2001) ........................................9

*Speaks v. Kruse,*
 445 F.3d 396 (5th Cir. 2006).....................................................................................4

*Stack v. Boyle,*
 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951)................................................................6

*Stanley v. Illinois,*
 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) .............................................6

*Stringer v. Williams,*
 161 F.3d 259 (5th Cir. 1998)....................................................................................2

*Thornburgh v. Abbott,*
 490 U.S. 401 (1989).................................................................................................11

*Troxel v. Granville,*
 530 U.S. 57 ...............................................................................................................9

*United States v. Marion,*
 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971) ...............................................5

*United States v. Salerno,*
 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987)............................................7

*Washington v. Glucksberg,*
    521 U.S. 702 (1997)..................................................................................................9

*Williams v. Ozmint*,
    716 F.3d 801 (4th Cir. 2013)..............................................................................12

*Wottlin v. Fleming*,
    136 F.3d 1032 (5th Cir. 1998)................................................................................2

Statutes

28 U.S.C. § 2241 .........................................................................................................2

28 U.S.C. § 2254(b) and (c).......................................................................................1

42 U.S.C. 1983 ................................................................................................. 1, 7, 13

Harris County files this motion to dismiss Tony and Patricia Underwood's Amended Emergency Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief under Section 42 U.S.C. 1983. Docket Entry 18 (DE).

It should be dismissed as this court has no jurisdiction.[1] Rule 12(b)(1) and (b)(6).

## I. Background

Mr. Underwood, who was shot by Houston police, is now receiving visitations from his family in Ben Taub hospital, pursuant to the state criminal court's order, which has sole jurisdiction over Mr. Underwood.

He was arrested and bond was given by the court. *State of Texas v. Tony DeWayne Underwood*, Cause No. 1914552, 248th Criminal Court, Judge Hilary Unger. He is charged with aggravated assault of a public servant.

The new order giving the family visitation was signed June 5, 2025, and filed of record in this court. Visitation has been ongoing since. See DE 26-1, signed order.

---

[1] Under 28 U.S.C. § 2254(b) and (c), a claimant seeking habeas corpus relief in federal court is required first to exhaust his claims by presenting them for review before the courts of the state in which he is confined. The exhaustion requirement is satisfied only when a petitioner's claims have been properly presented to the state's highest court, either on direct review or on post-conviction attack. *Bufalino v. Reno*, 613 F.2d 568, 570 (5th Cir.1980). As a general rule, federal habeas corpus relief is available on a habeas petition only when all of the claims in the petition have been exhausted through the state courts. *Rose v. Lundy,* 455 U.S. 509, 510 (1982). The Underwoods have assiduously avoided the criminal state court where Mr. Underwood is charged.

Prior to this, Harris County and the City of Houston both filed motions telling this federal court it does not have jurisdiction for multiple reasons. Harris County incorporates for all purposes its briefing and the City's briefing regarding jurisdiction. DE 24, City's motion to dismiss.[2]

It still has no jurisdiction.

The court just signed an agreed order dismissing the City.

What remains is this fatally flawed filing that continues to seek remedy from a federal court that has no jurisdiction.

In addition to the extent Plaintiffs have raised a *Monell* claim against the County, their pleadings are insufficient and must be dismissed.

## II. Summary of argument

First, the visitation is moot. The Underwoods are visiting their son. See court order, DE 26-1.

Harris County plans to seek a modification of the state court order in the criminal court, but again that is an issue for the state criminal court. It has no plans to deny visitation.

---

[2] Challenges raised in a pretrial habeas corpus petition are governed by 28 U.S.C. § 2241. See *Stringer v. Williams*, 161 F.3d 259, 262 (5th Cir. 1998). A § 2241 habeas petition is subject to summary dismissal if it appears from the face of the petition that the petitioner is not entitled to relief. See *Wottlin v. Fleming*, 136 F.3d 1032, 1034 (5th Cir. 1998) (affirming summary dismissal of § 2241 petition without ordering an answer from respondent); see also Rule 4 of the RULES GOVERNING SECTION 2254 CASES (providing for summary dismissal of a habeas petition).

Next, if the Underwoods want a modification, their remedy is in the state criminal court as well.

Nevertheless, the Underwoods assert their First, Fifth, Sixth, Eighth and Fourteenth amendment rights have been or are actively being violated. And they seek an injunction and habeas.

Their rights have not been violated. They have not show *Monell.*

### a. This court has no jurisdiction to rule, grant habeas or an injunction

Harris County refers this court to the prior briefing, as well as the City's briefing. DE 24, city's motion. The state civil district court has already ruled it has no jurisdiction. This federal filing is an end run around the state court criminal system of courts, state criminal court judges and the district attorneys' office. The Underwoods' remedy is with Judge Unger, where it has always been.

Undeterred, the Underwoods demand this federal court grant habeas,[3] grant access for counsel, order spiritual support and to "open and (sic) prompt channels of communication with next of kin…" DE 18, page 20-21.

Then the Underwoods want the court to "declare" that their rights have been violated. DE 18, p. 21.

---

[3] *Preiser v. Rodriguez,* 411 U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody"). There is no question that Mr. Underwood has been indicted for assaulting a Houston police officer and is properly in Harris County's custody.

Then grant injunctive relief ordering notifications of her son's condition;

Then set aside the state criminal court's order (there is another order now);

Then order no more restrictions on access to Mr. Underwood. DE 18, p. 22.

Then order judicial review, prior notice to counsel and an opportunity to be heard; and

Then order attorney's fees and costs.

All of this without any jurisdictional power to do so.

### b. Injunctive relief is not for this court to grant or deny

The Underwoods want this court, which has no jurisdiction, to enjoin Harris County. It is a legal impossibility.

A party seeking preliminary injunctive relief is required to satisfy the following four elements: (1) there is a substantial likelihood the party will prevail on the merits; (2) a substantial threat exists that irreparable harm will result if the party is denied preliminary injunctive relief; (3) the threatened injury to the petitioner outweighs the threatened harm to the respondent if relief is granted; and (4) granting relief will not disserve the public interest. *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009); *Speaks v. Kruse*, 445 F.3d 396, 399-400 (5th Cir. 2006).

Arguably these elements ASSUME that the court has jurisdiction to do so.

Injunctions should not be granted if the party has not proved all four elements. *Bluefield Water Association, Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 253 (5th

Cir. 2009); see also, *Oreye v. Low*, No. 1:24CV289, 2025 WL 715742, at \*1 (E.D. Tex. Feb. 6, 2025), *report and recommendation adopted,* No. 1:24-CV-289, 2025 WL 714369 (E.D. Tex. Mar. 5, 2025).

The Underwoods now have visitation, which they got from the state criminal court. The injunctive request is moot, under the first two elements. They have no grounds for an injunction, even though this court has no power to grant one. Again, to the extent that there are future visitation issues, the remedy for all parties is before the state criminal court judge.

**c. The Underwoods' Fourteenth Amendment rights have not been violated**

The Underwoods complain of "prolonged isolation" and failing to "provide communication or humane treatment during his medical crisis." DE 18, p. 14. To begin*, Bell v. Wolfish* does not help Mr. Underwood. *Bell* concerned a federal prison facility; pre-trial inmates were complaining about everything: overcrowded conditions, undue length of confinement, improper searches, inadequate recreational, educational, and employment opportunities, insufficient staff, and objectionable restrictions on the purchase and receipt of personal items and books. *Bell v. Wolfish*, 441 U.S. 520, 527 (1979).

The Supreme Court **found no violations of rights:**

It is important to focus on what is at issue here. We are not concerned with the initial decision to detain an accused and the curtailment of liberty that such a decision necessarily entails. See *Gerstein v. Pugh,* 420 U.S. 103, 114, 95 S.Ct. 854, 863, 43 L.Ed.2d 54 (1975); *United*

*States v. Marion,* 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971). Neither respondents nor the courts below question that the Government may permissibly detain a person suspected of committing a crime prior to a formal adjudication of guilt. See *Gerstein v. Pugh, supra,* 420 U.S., at 111–114, 95 S.Ct., at 861–863. Nor do they doubt that the Government has a substantial interest in ensuring that persons accused of crimes are available for trials and, ultimately, for service of their sentences, or that confinement of such persons pending trial is a legitimate means of furthering that interest. Tr. of Oral Arg. 27; see *Stack v. Boyle,* 342 U.S. 1, 4, 72 S.Ct. 1, 3, 96 L.Ed. 3 (1951). Instead, what *is* at issue when an aspect of pretrial detention that is not alleged to violate any express guarantee of the Constitution is challenged, is the detainee's right to be free from punishment, see *infra,* at 1872, and his understandable desire to be as comfortable as possible during his confinement, both of which may conceivably coalesce at some point. It seems clear that the Court of Appeals did not rely on the detainee's right to be free from punishment, but even if it had that right does not warrant adoption of that court's compelling-necessity test. See *infra,* at 1872–1875. And to the extent the court relied on the detainee's desire to be free from discomfort, it suffices to say that this desire simply does not rise to the level of those fundamental liberty interests delineated in cases such as *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923).

*Bell,* 441 U.S. at 533–35.

And *Turner v. Safley* applied to inmates' right to marry and exchange inmate-to-inmate letters. It does not deal with the County's right to secure custody of a hospitalized inmate who has been indicted for assaulting a Houston police officer. It is not an unreasonable restriction to monitor visitation, and it was not unreasonable to enforce the prior court order denying visitation. And again, this court does not have jurisdiction to alter the state criminal court's orders.

*Kingley v. Hendrickson*, while it does cite to *Bell,* dealt with excessive force, and also does not help the Underwoods.

> ... *Bell* itself shows (and as our later precedent affirms), **a pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose**. Cf. *Block v. Rutherford,* 468 U.S. 576, 585–586, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984) (**where there was no suggestion that the purpose of jail policy of denying contact visitation was to punish inmates, the Court need only evaluate whether the policy was "reasonably related to legitimate governmental objectives" and whether it appears excessive in relation to that objective**); *Schall v. Martin,* 467 U.S. 253, 269–271, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984) (similar); see also *United States v. Salerno,* 481 U.S. 739, 747, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) …

*Kingsley v. Hendrickson*, 576 U.S. 389, 398–99 (2015).

It is important to note that Ms. Underwood, is not entitled to declaratory or injunctive relief under the First and Fourteenth Amendments and § 1983 because (1) the parent of an adult child has no constitutional right to visitation or association; and (2) she has not plausibly established the deprivation of these purported rights. A parent of an adult child has no constitutional right to visitation with that child. *Bedingfield v. Deen*, 487 F. App'x 219, 232-33 (5th Cir. 2012). See also *Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999) (citation omitted) ("we note that, in a case where a prisoner was denied visitation with his mother, we stated that a prisoner has 'no constitutional right to visitation privileges.' "); see also *McCray v. Sullivan*, 509 F.2d 1332, 1334 (5th Cir. 1975) (stating that, in the context of the denial of conjugal visits, a prisoner does not have a constitutional right to visitation).

Nevertheless, the Underwoods have visitation per a state court order. Harris County's security concerns were not to punish Mr. Underwood, and they still are not, and there is no evidence otherwise. The family's unhappiness with the original court order is just not evidence that there was not a legitimate governmental objective for security. And they could have immediately gone to the state court criminal judge for any modification. They instead went to a civil state court judge who promptly ruled he had no jurisdiction.

### d. Mr. Underwood's access to counsel and courts is not violated

Mr. Underwood complains that he has not had access to Civil Rights counsel and only limited access to Criminal Defense counsel. He says his First, Fourteenth and Sixth Amendment rights are being violated. Mr. Underwood is receiving medical care for significant shooting injuries, and the state court's order only allows family visitation at this point. Counsel's remedy, if any, lies with the state court judge not with this court. Further, Mr. Underwood has a right to counsel is not being abridged by Harris County. He needs to address this with the state court judge. This court cannot do an end run around the criminal court's orders.

### e. The Underwoods "familial association" rights are not being violated

These rights have not been violated by Harris County, and the Underwoods cite to cases that do not support their argument. First, *Troxel* has to do with parents' rights regarding <u>minor children</u>. In that case, grandparents sought visitation with their dead son's children. The mother objected to the amount of time that was

sought. The Supreme Court struck the state statute that allowed anyone with interests

in the child to get visitation. *Troxel v. Granville,* 530 U.S. 57, 65 (plurality opinion)

(quoting *Washington v. Glucksberg,* 521 U.S. 702, 719 (1997)).

Next, *Overton v. Bazzetta* does not help the Underwoods either. The Supreme

Court there upheld the restriction jail visitation for two years in certain contexts.

> We have said that the Constitution protects "certain kinds of highly personal relationships," *Roberts v. United States Jaycees,* 468 U.S. 609, 618, 619–620, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984). And **outside the prison context,** there is some discussion in our cases of a right to maintain certain familial relationships, including association among members of an immediate family and association between grandchildren and grandparents. See *Moore v. East Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (plurality opinion); *Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923).

> **This is not an appropriate case for further elaboration of those matters. The very object of imprisonment is confinement. Many of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner. An inmate does not retain rights inconsistent with proper incarceration**. See *Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 125, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977); *Shaw v. Murphy,* 532 U.S. 223, 229, 121 S.Ct. 1475, 149 L.Ed.2d 420 (2001). And, as our cases have established, freedom of association is among the rights least compatible with incarceration. See *Jones, supra,* at 125–126, 97 S.Ct. 2532; *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). Some curtailment of that freedom must be expected in the prison context.

> We do not hold, and we do not imply, that any right to intimate association is altogether terminated by incarceration or is always irrelevant to claims made by prisoners. We need not attempt to explore or define the asserted right of association at any length or determine the extent to which it survives incarceration because the challenged regulations bear a rational relation to legitimate penological interests. This suffices to sustain the regulation in question.

*Overton v. Bazzetta*, 539 U.S. 126, 131–32 (2003).

Thus, the Supreme Court found a legitimate interest in restricting "intimate association." In this case, Harris County had a legitimate interest in making sure security protocols were followed because Mr. Underwood was under felony indictment. And his family now has the ability to see him under the new criminal court judge's order. It is not an unjustified intrusion on family rights, as the Supreme Court has said, when there is a rational reason for the penological interests.

### f. Mr. Underwood's religious rights are not violated

The Underwoods have three attorneys; they all had the SAME path to help their client in the criminal district court. That path is still there and will be until and if he is convicted and sent to state jail. The path is not with this court and will never be, as a matter of law.

Again, Mr. Underwood's remedy for his right to religious counsel lies with the state criminal court. Not this court. The Supreme Court in the *McCollum* case dealt with the separation of church and state. Not a pre-trial prisoner in the hospital who is under guard by Harris County. See *People of State of Ill. ex rel. McCollum v. Bd. of Ed. of Sch. Dist. No. 71, Champaign Cnty., Ill.,* 333 U.S. 203, 212, (1948).

### g. Mr. Underwood's familial association has not been violated

The Supreme Court has ruled that an inmate **"does not retain rights inconsistent with proper incarceration,"** and **"freedom of association is among the rights _least compatible with incarceration_."** *Overton,* 539 U.S. at 131

Moreover, the Supreme Court has explained that "any attempt to forge separate standards for cases implicating the [First Amendment] rights of outsiders [and inmates] is out of step" with Supreme Court precedent. *Thornburgh v. Abbott*, 490 U.S. 401, 410 n.9 (1989); *see also Sealey v. Olszewksi*, No. 14-CV-3, 2015 WL 9484521, at *4 (W.D.N.Y. Dec. 29, 2015) ("In the prison-visitation context, the visitor's rights are necessarily tied to the inmate's [rights]." (citations omitted)).

Thus, although the Constitution "protects certain kinds of highly personal relationships" and there exists "a right to maintain certain familial relationships, including association among members of an immediate family," "[s]ome curtailment of that freedom must be expected in the prison context." *Overton*, 539 U.S. at 131 (citations and quotation marks omitted).

To the extent a prison procedure curtails a prisoner's freedom to associate, the prisoner's constitutional right is not violated if the procedure "bear[s] a rational relation to legitimate penological interests." *Id.* at 132; *see also Patterson v. City of New York,* No. 11-CV-7976, 2012 WL 3264354, at *7 (S.D.N.Y. Aug. 9, 2012) ("[L]imitations on visits that are reasonably related to a legitimate penological interest do not violate a prisoner's constitutional right."). Moreover, the Court **"must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate**

**goals of a corrections system and for determining the most appropriate means to accomplish them.**" *Overton,* 539 U.S. at 132.

Simply put, in the wake of *Overton*, it cannot be said that the Supreme Court has recognized a right to visitation, even from a close family member, "or, at the least, that there is such a right that cannot be abridged or suspended by prison authorities for as long as the [seven weeks] at issue in this case." *Malavé v. Weir*, No. 16-CV-0009, 2018 WL 500644, at *5 (D. Conn. Jan. 22, 2018), *aff'd*, 750 F. App'x 65 (2d Cir. 2019). "Nor has the Second Circuit recognized a right to visitation or telephonic contact between [close family members] where one of the persons is in prison." *Id.* at *6; *accord Williams v. Ozmint*, 716 F.3d 801, 806 (4th Cir. 2013) ("Williams does not cite any case, or combination of cases, from this [c]ourt, the Supreme Court, or the highest court in South Carolina, that clearly establishes a constitutional right to visitation in prison grounded in the First, Eighth, or Fourteenth Amendments." (citation omitted)); *Dunn v. Castro*, 621 F.3d 1196, 1202 (9th Cir. 2010) (granting qualified immunity based on the Supreme Court's "hesitation in articulating the existence and nature of an inmate's right to receive visits from family members"); *Flynn v. Burns*, 289 F. Supp. 3d 948, 965 (E.D. Wis. 2018) ("Circuit courts have recognized the analytical lacunae left in the wake of *Overton*.").

**h. Plaintiffs have not shown *Monell***

To establish municipal liability under 42 U.S.C. § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right. *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009). The Underwoods have not shown or alleged any of the above three elements.

The Fifth Circuit has emphasized that a policy can be inferred only from a pattern displaying "similarity and specificity." *Peterson*, 588 F.3d at 851; *Inaimi v. Harris Cnty., Tex.*, No. 4:21-CV-01832, 2022 WL 901556, at *2 (S.D. Tex. Mar. 25, 2022) (Ellison, J.). In other words, "[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Peterson*, 588 F.3d at 851 (quoting *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)). Thus, "the prior acts [must] be fairly similar to what ultimately transpired." *Estate of Davis*, 406 F.3d at 383. A pattern also requires "sufficiently numerous prior incidents, as opposed to isolated instances." *Peterson*, 588 F.3d at 851; *Inaimi*, 2022 WL 901556, at *2. Here the Underwoods have made no allegations of policy or pattern and practice regarding visitation for inmates being held and treated in the hospital for wounds sustained in a shooting with Houston police.

### III. Conclusion

Too much time and energy has been spent on a case whose remedy is with the criminal court. It always has been.  It still is.

The court has no jurisdiction.

The Underwoods' rights have not been violated. Supreme Court precedent says so.

This court cannot grant habeas or an injunction. There is no *Monell.*

Dismiss this case.

Date: June 16, 2025.

Respectfully submitted,

**CHRISTIAN D. MENEFEE**
HARRIS COUNTY ATTORNEY

**JONATHAN G. C. FOMBONNE**
DEPUTY COUNTY ATTORNEY AND FIRST
ASSISTANT

**NATALIE G. DELUCA**
MANAGING COUNSEL,
DEFENSIVE LITIGATION, EMPLOYMENT, &
REAL ESTATE DIVISIONS

By:     */s/ Suzanne Bradley*
**SUZANNE BRADLEY**
Senior Assistant County Attorney
ATTORNEY-IN-CHARGE
State Bar No. 00793375
Fed. Bar No. 24567
Tel: (713) 274-5330 (direct)
Suzanne.Bradley@harriscountytx.gov

**FRANK FORD**
Assistant County Attorney
ATTORNEY TO BE NOTICED
Federal ID No. 565385
State Bar No. 24012642
Tel: (832) 570-7582 (direct)
Frank.Ford@harriscountytx.gov

**OFFICE OF THE HARRIS COUNTY ATTORNEY**
1019 Congress
Houston, Texas 77002
Tel: (713) 274-5330 (direct)

**ATTORNEYS FOR DEFENDANTS
HARRIS COUNTY, ED GONZALEZ,
AND JESSE MARTINEZ**

## CERTIFICATE OF SERVICE

I certify that, on June 16, 2025, pursuant to Federal Rules of Civil Procedure, a true copy of the instrument to which this Certificate is attached was duly served upon each party to this cause on the CM/ECF system, which will automatically serve a Notice of Electronic Filing to the parties.

*/s/ Suzanne Bradley*
Suzanne Bradley