IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Tony Underwood | § | |
| and | § | |
| Patricia Underwood | § | |
| | § | |
| Plaintiffs, | § | CIVIL ACTION NO. 4:25-cv-2089 |
| | § | |
| v. | § | |
| | § | |
| City of Houston, et al | § | |
| | § | |
| Defendants. | § | |
| | § | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO HARRIS COUNTY'S MOTION TO DISMISS UNDER RULE 12(b)(6)**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiffs file this Response in Opposition to Defendant Harris County's Motion to Dismiss (Dkt. 30), and respectfully show the Court as follows:

### I. INTRODUCTION

Tony Underwood is now deceased. But his death does not mark the end of this case, it marks its escalation. He died on **July 18, 2025** – 79 days after being shot, paralyzed, and subjected to near-total isolation under the authority of Harris County. What was once a living man's plea for access to counsel, family, and spiritual care has now become a constitutional reckoning. This Court had jurisdiction the day the complaint was filed, and that jurisdiction is not…and cannot be…erased by the very harm that Plaintiffs allege.

It took the filing of this very lawsuit to force the hand of government actors who, for over a month, ignored basic decency and constitutional responsibility. Harris County did not act out of policy, protocol, or penological necessity, it and its own courts acted only under the pressure of federal litigation. Only then, **34 days after Mr. Underwood was critically injured and experiencing quadriplegia**, did the local county government finally issue a valid court order granting his family the right to see him. Thirty-four days of silence, obstruction, and suffering. That delay speaks louder than any motion to dismiss.

Tony Underwood's final months were governed not by medical care, due process, or dignity, but by bureaucratic resistance, deliberate indifference, and institutional evasion. His death did not moot these claims; it solidified and crystalized them. Under long-established federal law, constitutional torts under 42 U.S.C. § 1983 survive the decedent. See *Rhyne v. Henderson County*, 973 F.2d 386, 391 (5th Cir. 1992). So too do the rights of his surviving family to bring wrongful death and familial association claims grounded in fundamental constitutional protections.

Tony Underwood survived for 79 days after being shot. But for nearly half that time, the first 34 days, he remained in complete isolation. He lay immobilized in a hospital bed, heavily medicated, unable to speak, and utterly cut off from his loved ones. His family was robbed of the chance to be by his side during the most critical period of his decline. And even after visitation was finally granted, initial access was erratic, delayed, and mired in bureaucratic confusion.

On July 27, 2025, Plaintiffs filed an omnibus Motion which includes a Motion to Substitute and Realign Parties under Rule 25(a) and realign claims under survival and

wrongful death theories, Motion for Leave to Amend, Extension to Respond to the very Motion to Dismiss that this Response is addressing and, in the alternative to Moot Harris County's Motion to Dismiss, (Dkt. 30). Plaintiffs expect to and pray this Court allows them to more fully detail the systemic and unlawful conduct that continued even after Mr. Underwood's charges were dropped "In the Interest of Justice" and he remained confined, dying, behind layers of security and silence.

Harris County's motion should be denied. If anything, the Court's intervention is now more urgent…not less.

## II. BACKGROUND

Tony Underwood was a pretrial detainee shot by law enforcement, specifically Officer Shaun Palin of the Houston Police Department, and subsequently held in near-total isolation while confined (a pre-trial detainee), ventilator-dependent, and experiencing quadriplegia at Ben Taub Hospital. Plaintiffs alleged violations of the First, Sixth, Eighth, and Fourteenth Amendments, along with Monell claims, and sought equitable and declaratory relief while Mr. Underwood remained alive. The District Attorney dropped all criminal charges on June 24, 2025, "In the Interest of Justice". Tony Underwood fought long and hard for his life, soliciting permission from his brother to allow him to let go and rest the day before he died. On the next day, Tony succumbing to his grave injuries, died on July 18, 2025.

Harris County argues that the claims are moot, that no constitutional violations exist, and that the Court lacks jurisdiction. These arguments are flawed in law and fact.

## III. LEGAL STANDARD

Under Rule 12(b)(6), dismissal is appropriate only if the complaint fails to state a claim upon which relief can be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court must accept all well-pleaded factual allegations as true and construe them in the light most favorable to the plaintiffs. *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).

## IV. ARGUMENT

### A. The Court Has and Retains Subject-Matter Jurisdiction

Federal courts are not passive observers of constitutional violations; rather, they are active enforcers of civil rights when state institutions fail. This Court possesses original jurisdiction under 28 U.S.C. § 1331 and 1343 to adjudicate claims brought under 42 U.S.C. § 1983 and has longstanding authority to entertain habeas corpus petitions pursuant to 28 U.S.C. §§ 2241 and 2254. That jurisdiction was properly invoked the moment this case was filed. It remains undisturbed.

The jurisdiction of a federal court is assessed at the time the complaint is filed, not retroactively extinguished based on post-filing developments. As the Supreme Court confirmed in *Steffel v. Thompson*, 415 U.S. 452, 460 n.10 (1974), "jurisdiction...must be assessed under the facts existing when the complaint is filed." This principle is not merely procedural – it is foundational to ensuring that federal courts remain a reliable forum for addressing the constitutional injuries that give rise to federal claims in the first instance.

Harris County's argument that this Court lacks jurisdiction because of a parallel state proceeding is simply misplaced. As the Fifth Circuit recently held in *Barnes v. Felix*, 84

F.4th 480, 487–88 (5th Cir. 2023), § 1983 and habeas corpus serve distinct purposes: § 1983 addresses unconstitutional conditions of confinement, while habeas challenges the fact or duration of that confinement. This action fits squarely within the former category. The injuries at issue, denial of access to all legal counsel, family visitation, and religious support, do not challenge the validity of Mr. Underwood's criminal charges or confinement, but rather the manner in which he was held while dying.

Moreover, even if any claim for prospective habeas relief became moot following Mr. Underwood's death, the remainder of this case emphatically is not. The constitutional violations suffered by Mr. Underwood while alive remain actionable under § 1983, and his passing gives rise to survival and wrongful death claims that the estate and next of kin are entitled to pursue.

Mootness is not triggered by every factual development. A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party. *Knox v. SEIU, Local 1000*, 567 U.S. 298, 307 (2012). And as the Supreme Court explained in *Friends of the Earth, Inc. v. Laidlaw Environmental Services*, 528 U.S. 167, (2000), that as long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.

That standard is easily met here. Plaintiffs seek damages for constitutional harms suffered by Mr. Underwood before his death. Those claims are not only alive, they are now bolstered by the indisputable fact that he died as a direct result of the circumstances surrounding his confinement. See *Rhyne v. Henderson County*, 973 F.2d 386, 391 (5th Cir. 1992) (constitutional tort claims under § 1983 survive the death of the plaintiff); *Kitchen*

*v. Dallas Cnty.*, 759 F.3d 468, 478 (5th Cir. 2014) (recognizing both pre-death survival and post-death wrongful death claims under § 1983); see also *Grandstaff v. Borger*, 767 F.2d 161 (5th Cir. 1985) (affirming damages under § 1983 after fatal shooting); *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 n.10 (5th Cir. 2017) (noting distinction under Texas law between wrongful death and survival claims).

Put simply, this Court's jurisdiction is secure. The case is not moot. The harms inflicted were real, ongoing, and ultimately fatal. The federal courthouse remains the proper place to confront what was done to Tony Underwood, and what continues to be done to others.

### B. Death of the Plaintiff Does Not Moot the Case

Constitutional claims survive death. See *Rhyne v. Henderson County*, 973 F.2d 386, 391 (5th Cir. 1992) ("Section 1983 claims survive the death of the plaintiff and may be pursued by the estate"). The injury, the denial of access to all counsel, family, and spiritual care during a prolonged, critical medical state, occurred while Mr. Underwood was alive. His passing gives rise to both survival and wrongful death claims.

### C. Plaintiffs Have Plausibly Alleged Monell Liability

Plaintiffs allege deliberate policies and customs by Harris County that obstructed visitation, legal access, and humane treatment for a critically ill pretrial detainee. Harris County's coordination with hospital security, refusal to communicate with family or all counsel, and obstruction of a state criminal court's visitation order reflect unconstitutional practices. See *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009); *Kitchen v. Dallas Cnty.*, 759 F.3d 468 (5th Cir. 2014).

Plaintiffs will clarify and expand upon the Monell claims in the amended complaint.

**D. The Constitutional Claims Are Legally Cognizable**

- **First Amendment**: The denial of pastoral support and spiritual guidance at the end of life violates religious exercise rights. See *Cruz v. Beto*, 405 U.S. 319 (1972).

- **Sixth Amendment**: Tony Underwood was deprived of access to criminal and civil rights counsel while in custody. See *Bounds v. Smith*, 430 U.S. 817 (1977).

- **Eighth & Fourteenth Amendments**: Pretrial detainees are entitled to humane conditions of confinement. See *Kingsley v. Hendrickson*, 576 U.S. 389 (2015). The extended isolation, despite medical incapacity and deteriorating condition, violated basic rights to humane treatment and familial contact.

- **Familial Association**: The **City of Houston**, through its police department, was the **initial custodian** of Tony Underwood following the use of deadly force on **April 30, 2025**, which left him paralyzed, ventilator-dependent, and gravely injured. During this period, while Mr. Underwood lay nonverbal in intensive care, the City permitted no familial access whatsoever. He was not a threat of danger to anyone or anything. He was a pretrial detainee being denied his constitutional and civil rights. Custody was later transferred to **Harris County**, which became the **second and final custodian**, and continued this punitive isolation.

It was not until **May 8, 2025**, when Plaintiffs filed this federal civil rights and habeas action, that serious legal pressure was applied. And yet it still took **nearly a full month** for meaningful change. On **June 5, 2025**, after weeks of obstruction and delay, a state criminal court finally issued a visitation order. Only then, **36 days after Mr. Underwood was shot**, did his family gain access to his bedside. For over a month, Plaintiffs were shut out completely from the life of their dying loved one. That deprivation, prolonged, deliberate, and cruel, was a constitutional violation in its own right.

But the obstruction did not end there. On **June 24, 2025**, the District Attorney's Office dismissed all charges against Mr. Underwood, citing the "**Interest of Justice**." Yet, just four days later, on **June 28, 2025**, Plaintiffs discovered, without formal notice, that new charges had been secretly refiled. A warrant and citation had been reissued. **Tony Underwood remained physically immobilized and dying**, yet the government had quietly restarted the very criminal machinery that had already been dismissed. The absurdity of re-indicting a dying man suffering from quadriplegia under continuous medical surveillance underscores the arbitrary cruelty at the core of this custodial regime.

Tony Underwood died on **July 18, 2025**, just weeks later. Though limited visitation had been restored during the final phase of his life, the prior **36-day deprivation** cannot be undone, and neither can the ongoing

constitutional insult of surveillance, confinement, and legal manipulation inflicted upon a man already beyond recovery.

These actions, taken in concert by the City and County, violated clearly established constitutional rights to familial association under the Fourteenth Amendment. See *Overton v. Bazzetta*, 539 U.S. 126, 131–32 (2003). Plaintiffs allege no penological, medical, or legal justification for barring a dying, nonverbal man from contact with his closest family. Nor can the refiling of charges after dismissal be justified by any principle of justice or necessity. What occurred here was not a function of criminal process. It was a system of carceral cruelty masquerading as procedure.

## V. CONCLUSION

Harris County's motion to dismiss is not merely premature, it is substantively without merit and procedurally unsound. The constitutional injuries at the heart of this case were fully realized while Tony Underwood was alive, and they tragically culminated in his death. That **death does not divest this Court of jurisdiction. It amplifies the stakes**. Plaintiffs' claims are not moot, they have evolved into well-founded causes of action under § 1983 for survival damages, wrongful death, denial of familial association, and municipal liability under *Monell*.

The complaint, as currently framed, alleges sufficient facts to survive scrutiny under Rule 12(b)(6). However, in light of the factual developments since the complaint was filed, including:

- Mr. Underwood's extended medical confinement,

- the family's prolonged exclusion,
- the belated issuance of a visitation order,
- the District Attorney's dismissal of charges "in the Interest of Justice,"
- the quiet re-filing of new charges and issuance of a warrant, and;
- ultimately, Mr. Underwood's death

Plaintiffs respectfully request, in the alternative, that the Court defer ruling and grant leave to amend pursuant to **Federal Rule of Civil Procedure 15(a)(2)** and to substitute the proper parties pursuant to **Rule 25(a)(1)** in fulfilment of Plaintiffs'' Motion (Dkt. 36).

Plaintiffs intend to amend the complaint to more fully articulate the scope of the constitutional violations, clarify and expand the *Monell* allegations against the approrate parties in light of the newest developments, and assert claims for both compensatory and punitive damages under federal and state law. This is not a case to be disposed of at the pleading stage. It is one that requires discovery, evidentiary development, and judicial review on the merits. The Constitution demands no less.

> **"Constitutional violations do not dissipate with death; they deepen."**
> *This language is the undersigned's own adaptation of the principle set forth in* Rhyne v. Henderson County, *973 F.2d 386, 391 (5th Cir. 1992) (holding that § 1983 claims survive the death of the injured party and may be pursued by the estate).*

Date: <u>July 28, 2025</u>　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　<u>*/s/Courtney A. Vincent*</u>
　　　　　　　　　　　　　　　　　　**Courtney A. Vincent**
　　　　　　　　　　　　　　　　　　Minnesota Bar No. 0403083

Admitted:
**U.S. District Court, Southern District of Texas**
SDTX Bar No. 3746531
info@vincentlawpllc.com
VINCENT LAW, PLLC
1035 Dairy Ashford, Suite 145
Houston, Texas 77079
**Mailing Address:**
P.O. Box 940129
Houston, Texas 77094
Tel: (713) 223-9300
Fax: (832)603-4444
**COUNSEL FOR PETITIONER**

## CERTIFICATE OF SERVICE

I hereby certify that on **July 28, 2025**, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically serve all counsel of record.

Respectfully Submitted,

*/s/Courtney A. Vincent*
**Courtney A. Vincent**